UNITED STATES of America, Appellee,

v.

**Eddie McCAIN, Appellant.**

**No. 81–1751.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1981.

Decided May 11, 1982.

---

1. The Hon. Donald D. Alsop, United States District Judge for the District of Minnesota.

James E. Wollrab, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., Richard L. Poehling, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Eddie McCain appeals his conviction on a charge of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). His primary contentions are that the district court[1] erred in refusing to suppress evidence obtained through both an impermissible, warrantless search and a defective search warrant.

We affirm the judgment of the district court.

---

1. The Honorable William L. Hungate, United States District Judge, Eastern District of Missouri.

The facts pertinent to this appeal date to the year preceding McCain's arrest on August 4, 1980. During this year, on numerous occasions, Officers Nicholas Frederiksen and Robert Thomure of the St. Louis, Missouri police department engaged in surveillance of the 4500 block of Delmar for traffic in heroin. On August 3 and 4, 1980, the officers received information from a confidential, reliable informant that narcotics could be found in McCain's premises[2] in this block.

At 6:00 p.m. on August 4, 1980 the officers drove down the alley at the rear of the premises for the purpose of corroborating certain information received from the informant. At this time, they observed one Luther Williams with a vial at the rear of the building. Williams was immediately arrested.

At the time of Williams' arrest, Officer Frederiksen stepped inside the rear door of McCain's machine shop at 4510 Delmar. Frederiksen identified himself as a police officer, and shouted to see whether any other persons were present. The record suggests that Frederiksen was concerned to determine whether police presence had been detected. Frederiksen left when he received no response.[3]

Officers Frederiksen and Thomure then applied for and received a state search warrant for "4510 Delmar, offices and work area of a machine shop." With the help of back-up police personnel, they executed the warrant within four hours of Williams' arrest at 10:00 p.m. on August 4, 1980.

The warrant was executed by entry into the middle of three front doors at McCain's premises. Officer Frederiksen announced his presence outside the middle door. This entry later proved to be 4512 Delmar. When he received no answer to his request to be admitted as a police officer with a search warrant, Frederiksen climbed through the transom of the middle door.

Frederiksen and two other officers proceeded down a hallway into an empty front room, and then into an office area of 4512 Delmar. Here, the police discovered and arrested appellant amidst various drugs and drug paraphernalia. Seven packets and a bottle containing heroin with a street value in excess of $15,000.00 were seized.

Appellant filed pretrial motions to suppress which were heard by a United States Magistrate, with the result that Count II of the indictment[4] was dismissed. Appellant's first trial on Count I, the heroin charge, terminated in a mistrial when the jury could not reach a verdict.

The case was retried on June 29, 1981. The jury returned a verdict of guilty, and the district court sentenced McCain to the custody of the Attorney General for a term of seven years to be followed by a special parole term of five years.

Appellant's arguments for reversal are that the trial court erred (1) in refusing to suppress evidence because the search warrant did not accurately name or describe the premises searched; (2) in denying his motion to suppress because the search warrant was based on a prior warrantless entry of the premises; (3) in denying his motion to suppress because the search warrant did not state reasonable cause for a night time search as required by Fed.R.Crim.P.

---

2. A hotly contested issue in this case is whether the single story building which housed appellant's machine shop at 4510 Delmar was a separate address for purposes of a search warrant from appellant's office space at 4512 Delmar.

In referring to McCain's "premises," we include generally those parts of the buildings at 4510 and 4512 Delmar under McCain's control. We make more specific reference to parts of the buildings where necessary.

3. There was some slight conflict in the testimony as to the length of time Frederiksen was inside. Frederiksen and Officer Thomure testi-

fied that Frederiksen "walk[ed] in, walk[ed] right back out, and close[d] the door." Luther Williams testified that Frederiksen went into the workshop for three to four minutes.

4. Count II charged possession of a Schedule IV substance, pentazocine, with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The magistrate recommended dismissal of this charge because the pentazocine was seized in a "sleeping area" not specified in the search warrant. The district court adopted the magistrate's recommendation.

41(c)(1); and (4) in admitting heroin samples which were not identified by a qualified witness.

Appellant's strongest argument for reversal is that the search warrant was facially deficient in its description of the premises to be searched. The warrant targeted for search the address "4510 Delmar, offices and work area of a machine shop." Strictly speaking, this description was accurate only insofar as McCain's machine shop was housed in a single-story structure at 4510 Delmar. The "offices" at McCain's premises were in an adjoining two-story structure marked by two front doors, leading respectively into 4512 and 4512A Delmar.

There is no doubt that the officers conducted a search of the first floor of 4512 Delmar. The heroin which is the basis for appellant's conviction was found there. We are compelled to conclude that the search warrant, in specifying "4510" as the operative street address for the officers' search, was technically deficient as to any search of the 4512 area of McCain's premises.

■ Not every defect in a search warrant, however, compels suppression of evidence seized pursuant to the warrant. The test for determining the sufficiency of the warrant description is "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Gill*, 623 F.2d 540, 543 (8th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980), *quoting United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.) (citation omitted), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

■ The first prong of the test, which looks to the officers' ability to locate the property with reasonable effort, is satisfied here. There is ample evidence in the record to show that the officers expected to search and reasonably did search the entire first floor area controlled by McCain, including the machine shop at 4510 Delmar and the

office at 4512 Delmar. The affidavits presented by Frederiksen and Thomure as a basis for a search warrant targeted the "front office" and workshop as locations for McCain's drugs.

The problem is not so much one of the officers' ability to locate the area they wished to search as one of their ability accurately to describe their target. The record shows that three external doors led into the buildings at 4510–4512A Delmar. The door furthest east led into the one-story building housing McCain's machine shop at 4510 Delmar. The other two doors led into a two-story building which shared a common external wall with the machine shop. One of these doors, that is, the middle door, led into McCain's office and sleeping area at 4512 Delmar, while the westmost door, numbered 4512A Delmar, led into a second floor area not at issue here. McCain at the suppression hearing denied the existence of an interior doorway connecting the machine shop at 4510 Delmar with the first floor of 4512 Delmar. The evidence of the police officers, however, viewed in the light most favorable to the verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), was that such a passageway existed. For purpose of the following discussion, we assume that McCain was able to move freely between the interior first floor areas of 4510 and 4512 Delmar, and that he controlled these areas as a unit.

Two of the three front doors were unnumbered. The number on the third door, 4512A Delmar, had been nearly obliterated by dark paint. The officers checked with the postal service prior to seeking a search warrant and learned that 4512 Delmar was not an active mailing address. Electric company records showed that electric service was billed to McCain at 4510 Delmar. Electric service at this billing address ran to both the machine shop at 4510 Delmar and the smaller office area at 4512 Delmar. As indicated, the office area of 4512 was adjacent to the number address (4510) named in the warrant. Both areas were under control of appellant. *United States v. Lemmons*, 527 F.2d 662 (6th Cir. 1975) (warrant

for street number 9300 covered all of store, including that part reached through archway in building numbered 9304), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976); *United States v. Melancon*, 462 F.2d 82 (5th Cir.), *cert. denied*, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972).

Given the lack of exterior numbers, the use of 4510 for billing and postal service, and McCain's control of the entire first floor area as if it were a single address, Officer Frederiksen believed that "4512 Delmar did not exist as an entity." Officers Frederiksen and Thomure selected "4510" as the only active street address relevant to the area they wished to search.

In these circumstances, we conclude that any technical failure of the warrant to designate "4512" as a search target is not grounds for reversal. Where one part of the warrant description is imprecise but the description has other parts which identify the place to be searched with particularity, searches have been routinely upheld. *United States v. Gitcho*, 601 F.2d at 371; *United States v. Shropshire*, 498 F.2d 137 (6th Cir. 1974), *cert. dismissed*, 420 U.S. 901, 95 S.Ct. 838, 42 L.Ed.2d 845 (1975). Here, whatever the warrant lacked in accuracy as to street address, it accurately and with particularity targeted McCain's "offices" and the building premises to be searched.

The second prong of the *Gitcho* test, that is, the probability of a mistaken search, is strongly negated here. Mistake is less likely when the premises have been under surveillance, as they were here for over a year before the search. *United States v. Gitcho*, 601 F.2d at 372; *United States v. Prout*, 526 F.2d 380 (5th Cir.), *cert. denied*, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976). Moreover, a mistaken search is unlikely

where, as here, the same officers both apply for and execute the warrant.

Appellant does not directly allege intentional or reckless misrepresentation[5] of the facts by the officers in seeking the search warrant. *Cf. Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Nor does he allege that the officers' affidavits failed to set forth sufficient indicia of the informant's credibility. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

We conclude that the warrant description was sufficient and that it reasonably included the office area at 4512 Delmar where the heroin was found.

Appellant next argues that the search warrant was invalid because it was based upon the prior warrantless entry of the premises which occurred at the time of the arrest of Luther Williams. Appellant's argument is bolstered by the testimony of Officers Frederiksen and Thomure that they entered the alley behind 4510 Delmar for investigative purposes. Officer Frederiksen stated that he wished to "gather a small bit of additional information prior to preparing the affidavits in support of a search warrant." Officer Thomure also testified that prior to discovering Williams, the officers were "looking for a piece of information on a vehicle that possibly might be parked in the back or inside the garage." After the officers arrested Williams, the record indicates that Frederiksen's entry into the machine shop was motivated by the need to determine whether persons inside had been tipped off.

---

5. Appellant does allude to the possibility of police misconduct. He states that the officers knew there were two separate structures. He implies that the officers failed properly to narrow the target of their search and instead used the warrant for 4510 Delmar as a roving commission to search elsewhere.

The issues implicitly posed are (1) whether the officers' affidavits contained intentionally or recklessly false statements as to where the drugs would be found, and (2) whether the

affidavits purged of falsities would be sufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Given the officers' attempt to identify the property through utility records, and given the lack of numbering on the front doors, we cannot conclude that the officers' selection of "4510" as the descriptive street number involved intentional or reckless falsity.

We acknowledge that the issue is close. We conclude, however, that the warrantless entry does not provide grounds for reversal.

We decline to characterize Officer Frederiksen's brief entry into the door and threshold area of the workshop as a search, *cf. United States v. Brandon*, 599 F.2d 112 (6th Cir.) (entry into used car lot did not involve privacy expectations comparable to residential entry), *cert. denied*, 444 U.S. 837, 100 S.Ct. 72, 62 L.Ed.2d 47 (1979); *United States v. Edmonds*, 611 F.2d 1386 (5th Cir. 1980) (investigatory activity on boat dock did not invade expectation of privacy), or to decide whether the warrantless entry was illegal. We recognize that the businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Here, however, Officer Frederiksen merely stepped for a moment into a machine shop area open to the alley for the main purpose of determining whether persons were present there, and, significantly, there is no evidence that information contained in the officers' affidavits was obtained during Frederiksen's entry. Careful scrutiny of the affidavits convinces us that the essential information therein came from a confidential reliable informant and from prior police surveillance. Frederiksen's entry into the back door area could not, for example, have enabled him to discover the location of drugs in the front office of the adjoining building. The intrusion also could not have served to inform him that drugs were moved from the workshop area to the front office. We conclude that the search warrant was untainted by information obtained in the prior entry, *United States v. Beck*, 662 F.2d 527 (8th Cir. 1981), and that in present circumstances legality of that entry is not decisive. *Cf. United States v. Rosenberg*, 416 F.2d 680, 682–83 (7th Cir. 1979) (motion to suppress should have been granted where original entry was illegal and where warrant was expressly obtained "on the basis of observations made during the first visit").

Appellant's final two contentions merit little discussion. McCain alleges that the search warrant did not set forth reasonable cause for nighttime execution as required by Fed.R.Crim.P. 41(c)(1). Although Rule 41 applies only where a warrant is sought by a federal law enforcement officer or where the search can otherwise be characterized as federal in character, appellant attempts to bring the present search into the ambit of Rule 41 under the "participation doctrine." This doctrine recognizes that federal involvement in a state search may serve to render the search subject to federal procedures. *United States v. Searp*, 586 F.2d 1117, 1121 (6th Cir. 1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); *United States v. Sturgeon*, 501 F.2d 1270, 1273 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974).

The facts in the present case, however, are hardly sufficient to invoke the doctrine. Appellant argues that the surveillance of his shop by the St. Louis police was part of a coordinated effort involving the federal Drug Enforcement Administration Task Force. In fact, the record shows only that Officers Frederiksen and Thomure discussed the surveillance of McCain with Anton Wagner, a St. Louis police officer detached to the Drug Enforcement Administration. No federal officers were involved in obtaining the search warrant or in executing it.

Searches may be characterized as federal in character if there is significant federal involvement in the search. *United States v. Brown*, 584 F.2d 252, 258 n.6 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). *Cf. United States v. Pennington*, 635 F.2d 1387 (10th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *United States v. Searp, supra*; *United States v. Turner*, 558 F.2d 46 (2d Cir. 1977); *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975); *United States v. Sturgeon, supra*. But here there is no extensive joint state-federal investigation involving McCain, no joint ap-

plication for or execution of the search warrant and no indication that federal agents utilized state officers and more flexible state procedures as a means of avoiding the strictures of Rule 41. We are simply unwilling to find federal involvement from a casual conversation with a federal officer.

Appellant finally argues that the district court committed plain error within the meaning of Fed.R.Crim.P. 52(b) in admitting heroin samples into evidence without adequate expert identification of the drug. This contention amounts to no more than an attack on the credentials of Victor Granat, the government's expert witness, and on the tests he performed. We perceive no error in the admission of the heroin, and certainly no plain error such that McCain's substantial rights were affected. *United States v. Massey*, 594 F.2d 676, 679 n.2 (8th Cir. 1979); *United States v. Davis*, 557 F.2d 1239 (8th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977).

The judgment of the district court is affirmed.