**UNITED STATES of America, Appellee,**

v.

**Norman SCHROEDER, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Jason YOUNG, Appellant.**

**Nos. 97–2014, 97–2047.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1997.

Decided Nov. 4, 1997.

· Jerome T. Kearney, Federal Public Defender, Little Rock, AR, for Norman Schroeder.

E. Alvin Schay, Little Rock, AR, for Jason Young.

Gwendolyn Dewees Hodge, Asst. U.S. Atty., Little Rock, AR, for United States of America.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge [1], and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Van Buren County, Arkansas, Sheriff's Department obtained a search warrant for a piece of rural property located outside the town of Clinton, Arkansas. The warrant, signed by a state magistrate, authorized a search of "the property ... located as follows:"

> go north from the corner of Main Street and Hwy 65 .9 miles to Hwy 16 West, turn left and go 21.0 miles to county road

---

1. Judge Henley died on October 18, 1997. This opinion is consistent with his vote at the panel's conference following oral argument of the case on September 11, 1997.

77 (commonly known as Rex road). Turn left and go 1.1 miles. Residence is a mobile home, sitting parallel to the county road, on the right. The color is yellow and there is the frame of an A-frame house near and a school bus type vehicle to the north of the A-frame.

The warrant authorized a search of "the premises and property, including all buildings and vehicles," but nowhere specified an address.

When law enforcement officials executed the search warrant, instead of following the directions contained in it (which would have led them directly to the residence at Route 3, Box 186–A), they turned right at the "Y" formed by the intersection of Routes 77 and 72, and entered the property from another direction. In doing so, they encountered first not Route 3, Box 186–A, but Route 3, Box 201–A, the adjoining property to the north; and rather than coming upon a "mobile home, sitting parallel to the county road, on the right," they encountered Norman Schroeder's white camper trailer, surrounded by a barbed wire fence, a ditch, and thick foliage. The officers then proceeded to search Mr. Schroeder's residence as well as the buildings and vehicles mentioned in the search warrant. In the camper trailer they found evidence of the manufacture of methamphetamine. From the yellow mobile home, inhabited by Jason Young and another defendant (not a party to this appeal), the officers seized Mr. Young's wallet containing several recipes for methamphetamine, shipping receipts, and other evidence relevant to the manufacture of methamphetamine. Neither Mr. Schroeder nor Mr. Young was shown a warrant at the time of the search. The defendants were arrested and charged with knowingly and intentionally attempting to manufacture methamphetamine.

Mr. Schroeder moved to suppress the evidence seized from his home because the search warrant did not authorize the search of his home and its curtilage, and thus, he contended, the search of his property violated his right under the Fourth Amendment to be free from warrantless searches. Both defendants argued that the evidence should be suppressed because they were not shown a warrant at the time of the search, in violation of Fed.R.Crim.P. 41(d) and Ark. R.Crim. P. 13.3(b). The district court, following the recommendation of a magistrate judge, held that the warrant described the property in question with sufficient particularity, partly because all of the property relevant to the case was commonly owned, and that no Fourth Amendment rights were violated simply because the property was entered from a direction not specified in the warrant. The district court also held that the officers' failure to show the defendants a warrant did not call for suppression of the evidence obtained. Upon denial of their motions to suppress, the defendants entered conditional pleas of guilty, and this appeal followed. We remand the cases to the district court for further proceedings.

## I.

▮ We believe that the district court erred in denying Mr. Schroeder's motion to suppress. The crux of the error lies not in the finding that the search warrant was written with sufficient particularity, but in the finding that the search warrant identified Mr. Schroeder's residence at all. In recommending to the district court that the evidence obtained in the search of Mr. Schroeder's home not be suppressed, the magistrate judge noted that "[t]he fact that there may be two ways of accessing the property ... and two separate mailing addresses does not contradict the fact that the property constituted one parcel.... It was reasonable for the officers to approach this tract as one property." Photographs and drawings submitted to the court, however, belie that conclusion. The district court held that it was reasonable for the officers to believe that Mr. Schroeder's property was included in the warrant, but apposite cases are to the contrary.

The warrant, fairly construed, does not authorize a search of Mr. Schroeder's residence. It authorizes the search of "the property ... located" by traveling to a certain place in a certain carefully described way. It specifically mentions a mobile home, an A-frame house, and a school bus, and thus authorizes a search of these structures and,

**442**

by implication, any other vehicles, structures, or property not noticeably separate from them. But as we have already said, Mr. Schroeder's camper trailer was distinctly separated from the property described in the warrant. The relevant cases do not support an interpretation of this warrant that would authorize the officers to extend their search into the well-demarcated bounds of a neighboring curtilage.

The Supreme Court has held that "the Fourth Amendment protects people, not places. What a person ... seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). The extent of a constitutionally protected space will be determined not only by reference to relevant enclosures but also by a consideration of "the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). Further, the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). This legitimate expectation is based not solely on ownership, nor on positive law, but on what is socially recognized as reasonable. *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990). *See also Rakas*, 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430 n. 12.

Regardless of who actually owned the land he lived on, or how many other people resided on the same piece of property, Mr. Schroeder had a socially recognized expectation of privacy in his residence. His home was surrounded with foliage, a ditch, and a barbed wire fence. He had his own, separate driveway. His family lived in the camper trailer with him, and they used the land and the camper trailer inside the fence as a residence. In *Dunn*, 480 U.S. at 296, 305, 107 S.Ct. at 1137, 1141–42, a barn, separated by a fence from the residence, was found to be outside the residence's curtilage and therefore outside the protection of the Fourth Amendment. If a barn, used by the inhabitants of a nearby residence but otherwise uninhabited, and separated from it by a mere fence, is, for purposes of Fourth Amendment analysis, a separate entity, then surely two residences, separated by barbed wire and maintaining separate addresses, are as well.

Thus the warrant did not violate the Constitution for lack of specificity. Instead, the officers violated the Constitution by searching Mr. Schroeder's residence without a warrant. The government contends, however, that even if this is so, the officers' mistake was a reasonable one, and therefore subject to the "good faith" exception established in *United States v. Leon*, 468 U.S. 897, 922–25, 104 S.Ct. 3405, 3420–22, 82 L.Ed.2d 677 (1984). We disagree.

As the government's own brief notes, "a good faith exception to the exclusionary rule exists if the reliance by the officers on an *invalid* search warrant is objectively reasonable" (emphasis added). The government's reliance on *Leon* is therefore misplaced, for the warrant in this case was not invalid. "The good faith exception in *Leon* was announced in response to a factual situation where officers were acting in reasonable, good faith reliance upon a search warrant which was ultimately found to be invalid." *United States v. Marts*, 986 F.2d 1216, 1219 (8th Cir.1993). In our case, as in *Marts*, the warrant was not invalid, and the question of whether the officers relied on an invalid warrant in good faith is therefore not at issue.

The Supreme Court has, however, recognized "the need to allow some latitude for honest mistakes that are made by officers ... executing search warrants." *Maryland v. Garrison*, 480 U.S. 79, 87, 107 S.Ct. 1013, 1018, 94 L.Ed.2d 72 (1987). In *Garrison*, the Court held that officers who searched an adjoining apartment in addition to the one that they had reason to believe contained evidence of crime acted reasonably in doing so because "[t]he objective facts available to the officers at the time suggested no distinction" between the two apartments. *Id.* at 88,

107 S.Ct. at 1018. The Court pointed out, moreover, that the residents of both apartments were present at the search, and that nothing that they did or said gave any indication that the apartments were separate. *Id.* at 88 n. 12, 107 S.Ct. at 1018 n. 12. The Court concluded that because of this, and because of other steps that the officers took to ascertain who lived on the relevant premises, "the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched." *Id.* at 88, 107 S.Ct. at 1019.

In contrast, we believe that the officers in this case did not act reasonably when they assumed that Mr. Schroeder's property was the same as that described in the warrant, because the distinction between the property described in the warrant and Mr. Schroeder's curtilage was abundantly apparent. As the Court has admonished, "the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). But here, "though the boundaries of curtilage are naturally and necessarily imprecise, the officers undertook a search that caused them to invade what they could not fail to have known was potentially [another's] curtilage." *United States v. Reilly,* 76 F.3d 1271, 1281 (2nd Cir.1996), *aff'd,* 91 F.3d 331 (2nd Cir. 1996) (*per curiam*).

We therefore hold that the district court should have suppressed the evidence seized from Mr. Schroeder's residence.

## II.

■ Mr. Young argues that the police officers violated his Fourth Amendment rights in a number of ways, but after a careful consideration of those arguments, we find them to be without merit. Mr. Young also contends that the officers' failure to provide him with a copy of the warrant at the time of the search constituted a violation of Fed. R.Crim.P. 41(d) and that this omission should have led to the suppression of the evidence obtained in the search.

Mr. Young's reliance on the federal rules is inappropriate. The warrant was executed by state officers, authorized by a state magistrate, and obtained pursuant to an investigation into possible violations of state law. "This is not a case in which the state officers intentionally violated a federal statute that governed their conduct. Here, [the federal rule] was irrelevant to [the officers] at the time the warrant issued." *United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992). "Searches may be characterized as federal in character if there is significant federal involvement in the search ... But here there is no extensive joint state-federal investigation involving [the defendant], [and] no joint application for or execution of the search warrant." *United States v. McCain,* 677 F.2d 657, 662–63 (8th Cir.1982). Even if there were federal officers present at the search in this case, the warrant was not issued and executed pursuant to federal authority. Because the federal involvement in obtaining the warrant and in executing it was at most negligible, state law applies under our ruling in *Moore.*

■ But Mr. Young also complained in the district court, and complains here, that the officers' failure to provide him with a copy of the warrant at the time of the search constituted a violation of Ark. R.Crim. P. 13.3(b), which provides that an executing officer shall, "[i]n the course of any search or seizure," give a copy of the relevant warrant to the person in control of the premises being searched. It also requires that the copy be provided "before undertaking the search or seizure," unless doing so "would endanger the successful execution of the warrant with all practicable safety." Deputy Cossey testified at the suppression hearing, without explanation, that he did not provide a copy of the warrant to the defendants during the search. No one testified that there was any danger that might have necessitated withholding the warrant. Ark. R.Crim. P. 13.3(b) was therefore clearly violated.

A violation of the rule, however, will not necessarily lead to suppression of evidence. Although we have never determined what the proper remedy should be when no warrant is presented during a search, other courts have held that such a failure warrants suppression only upon a showing of prejudice or deliber-

ate disregard of the rule. *See, e.g., United States v. Kelly,* 14 F.3d 1169, 1173 (7th Cir. 1994), and *United States v. Marx,* 635 F.2d 436, 441 (5th Cir.1981). While these cases deal with suppression under Fed.R.Crim.P. 41(d), the purposes of Fed.R.Crim.P. 41(d) and Ark. R.Crim. P. 13.3(b) are substantially similar. We believe, therefore, that in determining whether suppression is warranted under the Arkansas rule we should apply the same standard that our sister circuits have applied under the federal rule. We inquire, in other words, in this case, whether the violation of the rule was deliberate.

While it is conceded that none of the officers present at the scene of the search ever presented the warrant to Mr. Young, we are not inclined to hold that this omission, by itself, is sufficient to support a finding that the officers deliberately violated the applicable Arkansas rule. Such an omission is just as likely to have been inadvertent or merely negligent, and therefore not deliberate. We do, however, believe that a failure to show the warrant to Mr. Young after he asked for it would be a deliberate violation of the rule, and, indeed, Mr. Young testified at the suppression hearing that he repeatedly demanded to see the warrant, but to no avail. The magistrate judge made no finding, though, as to whether Mr. Young in fact asked the officers to show him the warrant, and no one ever asked Deputy Cossey at the suppression hearing whether Mr. Young asked to see it. We therefore believe that a remand is necessary so that the district court can determine whether the officers' omission was a deliberate one. We leave it to the district court to decide whether it wants to make this determination from the present record or from the present record supplemented by other evidence.

### III.

For the reasons indicated, we remand the cases to the district court and direct it to vacate Mr. Schroeder's guilty plea and to grant his motion to suppress. We also remand for further consideration of Mr. Young's motion to suppress. If the district court finds that the officers acted deliberately in failing to present Mr. Young with the

warrant, it should vacate Mr. Young's guilty plea and grant his motion to suppress as well.