# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3654

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Santos Garcia Tavares, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  February 15, 2000

Filed:  August 31, 2000

_____

Before BEAM and JOHN R. GIBSON, Circuit Judges, and PRATT,[1] District Judge.

_____

JOHN R. GIBSON, Circuit Judge.

Santos Garcia Tavares conditionally pled guilty to possessing a firearm in violation of 18 U.S.C. § 922(g) (1994 & Supp. IV 1998), reserving the right to appeal the district court's denial of his motion to suppress evidence obtained in connection with a search of his house by state and federal authorities on March 6, 1998.  Because the searching officers violated 18 U.S.C. § 3109 (1994), we reverse and instruct the district court to vacate Tavares's guilty plea and grant his motion to suppress.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

On the morning of March 6, 1998, Sergeant Michael Drews of the St. Paul Police Department contacted the Drug Enforcement Agency and spoke with Agent Glenn Haas. Drews told Haas that Sergeant Greg Lind, also with the S.P.P.D., was in the process of requesting that a state judge sign a search warrant authorizing a "no-knock" entry for a residence at 492 Ada Street, St. Paul, Minnesota. Drews explained that an individual had been seen at the residence whose associations could be traced to individuals connected to a DEA investigation. In response, Haas contacted Ed Bauer, his group supervisor, and Tim McCormick, the resident DEA agent in charge of the local office. The three went to the S.P.P.D. to determine whether a search of 492 Ada Street would interfere with the DEA investigation. When Lind arrived with the signed warrant, Haas read it. Based on information Lind provided, Haas determined the search would not interfere with the DEA investigation, and his supervisors agreed. With the DEA's approval, Lind decided to go forward with the search. Haas testified that the DEA agents volunteered their assistance because there was a potential of finding a large amount of drugs in the house, and if that occurred, the case might be prosecuted in federal court. Lind needed the help, so he accepted the offer. Lind then briefed the officers and agents who would be executing the search as to the house's location and the plan for the initial entry.

At 1:30 p.m that same day, the officers and agents executed the search warrant. Four federal agents participated. Haas and Agent Dan Faflack, a Customs Agent on the DEA Task Force, were part of the entry team. Bauer and McCormick were posted outside. Lind, the lead person on the entry team, used a ram to force his way into the house. He did not knock and announce his presence before entering. Tavares, who was present during the search, was handcuffed by Lind and placed on the living room couch. In an upstairs bedroom closet, Lind found a .45 caliber semiautomatic handgun and a fully-loaded .45 caliber clip. However, no drugs were discovered.

# I.

When a district court denies a motion to suppress evidence, we will uphold the court's findings of fact unless clearly erroneous. See United States v. McMurray, 34 F.3d 1405, 1409 (8th Cir. 1994). However, we review the court's application of law to those facts de novo. Id. "We affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (internal quotations omitted). Because the district court erred in interpreting the law and in applying it to the facts of this case, we reverse.

# II.

Tavares argues that the district court erred in concluding that 18 U.S.C. § 3109 did not apply to the officers' and agents' conduct in executing the search warrant. The statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant.

18 U.S.C. § 3109.

# A.

Section 3109 applies "[w]hen federal officers are a significant part of a search conducted pursuant to a state warrant . . . ." United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995); see United States v. Moore, 956 F.2d 843, 847 n.3 (8th Cir. 1992).

Accord United States v. Brown, 52 F.3d 415, 418, 420 (2d Cir. 1995) (search executed by state and federal officers pursuant to a state warrant made the search subject to federal rules).  In Moore, we stated that "[f]ederal agents may not circumvent more restrictive federal requirements by arranging for state officers to search under state law," 956 F.2d at 847 n.3.[2]

In the case before us, the facts related to the issue of federal involvement are not in dispute.  The search warrant was obtained by a state officer, Lind, and issued by a state judge.  Haas testified that he was contacted around the time the warrant was being obtained, and that he in turn contacted Bauer and McCormick.  Soon thereafter, and before it was executed, Haas read the warrant.  Though they were not involved in the planning, directing, or organization of the search, agents Haas, Bauer, McCormick, and Faflack constituted four of the approximately ten law enforcement officers who participated in the search.  Six or seven of those officers, including Haas and Faflack, were members of the entry team.  Haas's supervisors, Bauer and McCormick, were posted outside the house.  Haas testified that part of the execution of a warrant involves officers standing around the perimeter of the search scene, so Bauer and McCormick did, in fact, participate in the execution of the warrant at Tavares's residence.  According to Haas's testimony, he was interested in participating in the execution of the warrant because of the possibility of a federal prosecution if a large amount of drugs was recovered.  Haas discussed this possibility with the St. Paul police prior to the search.  Lind, the only other witness to testify, confirmed that the federal agents participated in executing the warrant because of the possibility of finding a large amount of drugs.

_____

[2]Unlike the dissent, however, we do not read Moore, or any of our other precedent to require an additional showing that the state warrant is just a "ruse" to cloak a federal investigation once significant federal involvement is shown.

-4-

The district court focused primarily on the lack of federal involvement in obtaining the search warrant, noting that "the preparation of the affidavit in support of the search warrant was well along in its formative stages" when there was contact between the St. Paul officers and the federal authorities. The court found it significant that the affidavit was prepared before any federal involvement in the case. The court further found that the federal involvement was only "incidental to the state court search warrant," and that there was no intent to evade the federal requirements of 18 U.S.C. § 3109. Therefore, the court determined that section 3109 did not apply. The court's concentration primarily on the lack of federal involvement in obtaining the search warrant, giving substantially lesser weight to federal involvement in the execution of the warrant, does not faithfully apply our precedent.

In determining whether there is significant federal involvement, our cases focus not only on the efforts to obtain a warrant, but also on the execution of the warrant. In United States v. McCain, 677 F.2d 657, 662 (8th Cir. 1982), we observed that "federal involvement in a state search may serve to render the search subject to federal procedures." However, since no federal officers were involved in the criminal investigation, or in obtaining or executing the warrant, federal rules did not apply to the search. Id. at 662-63.[3] See also Moore, 956 F.2d at 847 (section 3109 not applicable where state officers acted totally without federal involvement in seizing evidence); United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995) (no "significant federal involvement" where no federal officer participated in initial entry and search of residence, and where federal officers not contacted until after state officers found what they believed to be explosives). In United States v. Schroeder, 129 F.3d 439, 443 (8th Cir. 1997),[4] we held that even the presence of federal officers at the search would not

_____

[3]McCain involved the applicability of Fed. R. Crim. P. 41(d). However, the analysis is the same in section 3109 cases. See footnote 4, infra.

[4]Schroeder involved the applicability of Fed. R. Crim. P. 41(d), rather than 18 U.S.C. § 3109. However, our analysis was based on our prior ruling in Moore, a

have constituted significant federal involvement, at least where state officers obtained and executed a warrant issued by a state judge as part of an investigation based on state law. Cf. Byars v. United States, 273 U.S. 28, 33 (1927) (before the exclusionary rule was held applicable to the states, federal participation in execution of state warrant rendered the search "in substance and effect . . . a joint operation" of local and federal officers to which federal exclusionary rules apply); Lustig v. United States, 338 U.S. 74, 79 (1949) ("The decisive factor in determining the applicability of the Byars case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress.").

While there is no question the warrant was obtained by state officials, there was contact between the St. Paul Police Department and the federal agents before the warrant was obtained. There was discussion of the effect of the search upon a DEA investigation and the possibility that the search might uncover multiple pounds of methamphetamine. Both Lind and Haas contemplated federal prosecution if that quantity of drugs were recovered. The federal officers thus played more than a passive role in preparing for the search.

Regarding the execution of the warrant, four of the approximately ten officers involved were federal. Of the entry team of six or seven, two were federal. There is no doubt that Lind of the St. Paul Police Department forced open the door, but the two federal officers were either second and third in the entry, or third and fourth. These federal officers each searched a specific portion of the house. Had they found illegal contraband, they would have asked the state inventory officer to seize it. The two federal supervisors also participated in the entry by being present outside the residence. McCain, Moore, and Murphy all point to the significance of participation in the search.

section 3109 case.

The district court erred in concluding that the federal involvement was only "incidental to the state court search warrant."

There is more federal involvement in the execution of the warrant in this case than in the cited cases. Here, federal agents were directly involved in the execution of the search warrant. That participation was lacking in McCain, Moore, and Murphy, and was "at most negligible" in Schroeder, 129 F.3d at 443. And unlike the situation in Schroeder, id., where officers conducted a search to look for possible violations of state law, Lind and Haas contemplated that Tavares might be prosecuted federally if a large amount of drugs were uncovered. This situation is one that fits the definition of "significant involvement of federal officers." Where federal agents directly participate in a search conducted pursuant to a state warrant, but with an expectation of federal prosecution, the stage is set for the circumvention of more restrictive federal requirements such as those set forth in section 3109. See Moore, 956 F.2d at 847 n.3. Therefore, we conclude that the district court erred in determining that there was no significant federal involvement. Section 3109 was thus applicable.

## B.

The next step in our section 3109 analysis is to determine whether the statute has been violated. Lind admitted in his testimony before the magistrate judge that he had not knocked and announced his presence or purpose before entering the Tavares home. Our inquiry does not stop there, however, as exigent circumstances can excuse officers executing a search warrant from meeting the requirements of section 3109. There must be particular facts establishing "an urgent need to force entry[, which] . . . may result from danger to the safety of the entering officers or from the imminent destruction of evidence." United States v. Lucht, 18 F.3d 541, 549 (8th Cir. 1994). However, at the time of the search in the present case, the officers had no evidence of any such exigent circumstance.

With regard to the destruction of evidence exigency, there is no blanket exception to the knock and announce requirement for felony drug cases. See Richards v. Wisconsin, 520 U.S. 385, 388 (1997).[5] Therefore, the government must point to exigent circumstances peculiar to this case. We know from Lind's affidavit in support of his application for the search warrant that he held the following additional information: (1) a confidential reliable informant stated he or she saw a large quantity of a controlled substance at 492 Ada Street in the presence of its resident, identified as Santos; (2) a criminal history check of Tavares showed six entries for either drug possession or parole and probation violations on drug related charges; (3) while conducting surveillance of the residence, Lind had observed individuals he knew to be involved in the drug trade; and (4) the residence might be connected to the individuals responsible for an earlier drug related arrest which uncovered five pounds of methamphetamine. The officers had evidence of a large quantity of drugs, and while Lind's affidavit states that drugs are easily disposed of, he testified that a package of five pounds of methamphetamine is large and would not be easy to flush down a toilet or pour down a sink. The presence of a large amount of drugs makes their imminent destruction difficult, which cuts against the argument that evidence might have been destroyed had the officers knocked and announced their presence. See United States v. Bates, 84 F.3d 790, 796-97 (6th Cir. 1996) (no exigency existed, because fifteen pounds of cocaine could not be quickly disposed of, and there was no reason to believe that the defendants were likely to destroy evidence). Furthermore, at the time he applied for the warrant, Lind did not have any information that Tavares had any history of trying to destroy or hide evidence.

---

[5]Though this case analyzed the knock and announce requirement in light of the Fourth Amendment reasonableness inquiry, the principle we cite is equally applicable to a section 3109 inquiry, because section 3109 "is more restrictive than the Fourth Amendment." Moore, 956 F.2d at 847.

There is also no evidence in the instant case showing that a no-knock entry was necessary for the safety of the officers. When applying for the warrant, Lind did not have any information that Tavares was known to use weapons, that he was armed or carried a weapon, or that he had a history of violence toward law enforcement officers. The only statement Lind could offer as to the dangerousness of the search was his bare conclusion in the warrant application that unidentified suspects might be involved in violent crimes. No evidence has been offered to support that allegation, however. Therefore, we conclude that no exigency existed in this case to excuse the requirements set forth in section 3109.

## C.

Finally, we must determine if the officers relied in good faith on the provision in the search warrant authorizing a no-knock entry into the Tavares home. See United States v. Leon, 468 U.S. 897, 922-23 (1984) (establishing good faith exception to the exclusionary rule in the Fourth Amendment context); United States v. Marts, 986 F.2d 1216, 1218-19 (8th Cir. 1993) (applying Leon in the section 3109 context). This exception to the exclusionary rule requires that the officers executing the warrant conduct themselves in an "objectively reasonable" manner and with "a reasonable knowledge of what the law prohibits." Marts, 986 F.2d at 1219 (internal quotations omitted).

The warrant in the case at bar contained a "no knock" provision, which stated that the executing officers need not knock and announce their presence before entering the Tavares home. In the application and supporting affidavit, Lind stated that the "no knock" provision was necessary for two reasons--controlled substances are easily disposed of, and unidentified suspects might be involved in violent crimes. However, as stated above, there has been no evidence presented to support the presence of either exigency.

The government argues that the officers' and agents' reliance on the warrant was nevertheless reasonable in light of State v. Lien, 265 N.W.2d 833, 838-39 (Minn. 1978), which held there is no blanket exception to the knock and announce requirement in drug cases, but that the requirement need not be satisfied if the "dwelling is being used . . . as an outlet or warehouse for a drug business."  However, Lien's exception to the no-blanket-exception rule it announced is clearly overruled by Richards, 520 U.S. at 388, which held there is no blanket exception to the knock and announce requirement in felony drug cases and endorsed no exception to the rule.  As did the officers in Marts, the officers in the instant case "clear[ly] violat[ed] . . . the knock and announce rule, without the presence of exigent circumstances."  986 F.2d at 1219. Therefore, the executing officers do not benefit from Leon's good faith exception, and Tavares's motion to suppress should have been granted by the district court.

## III.

Tavares also argues that his Fourth Amendment rights were violated by the officers' failure to knock and announce their identity and purpose before forcing entry into his home.  Because we find that section 3109 requires the suppression of evidence obtained from the search, we need not reach this constitutional issue.

\*          \*          \*

Based on the foregoing, we reverse and remand to the district court with directions that it vacate Tavares's guilty plea, grant his motion to suppress evidence obtained as a result of the unlawful search of his home, and conduct further proceedings that may be appropriate.

BEAM, Circuit Judge, dissenting.

I respectfully suggest the court used the incorrect standard to determine if 18 U.S.C. § 3109 was violated. Accordingly, I dissent.

I agree with the court that there must be "significant" federal involvement before section 3109 is implicated. However, under our precedent, ignored by the court in this case, that is not the end of the inquiry. This circuit requires us to look beyond the level of involvement to determine if the state warrant is just a ruse to cloak a federal investigation and circumvent the more stringent federal statutory requirements for a warrant. See United States v. Moore, 956 F.2d 843, 847 n.3 (8th Cir. 1992); see also United States v. McCain, 677 F.2d 657, 662-63 (8th Cir. 1982).

As the court points out, a state officer sought the warrant and a state judge issued it. The state officer in charge of the investigation contacted the DEA agent as a courtesy to find out if the state search would interfere with an ongoing DEA investigation. DEA agents met with the St. Paul police after the warrant had been issued to determine if the DEA investigation would be affected. And, although federal agents participated in executing the warrant, they took no part in planning the search.

On the basis of this evidence, the district court found that there was no evidence that indicated the state warrant was used to circumvent section 3109. We review this finding for clear error. See United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999). This district court's finding was not clearly erroneous and, therefore, the evidence should not be suppressed under section 3109.

I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.