# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3079

_____

United States of America,              *
                                      *

Appellee,         *

                                   *   Appeal from the United States

v.                       *   District Court for the
                                   *   Western District of Missouri.

Stephen B. Brewer,         *

                                      *

Appellant.        *

_____

Submitted: September 25, 2009
Filed: December 17, 2009

_____

Before MELLOY, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Stephen Brewer entered a conditional guilty plea to three counts of production of child pornography and one count of possession of child pornography, reserving the right to appeal the denial of his motion to suppress. We affirm.

## I.    BACKGROUND

On November 22, 2005, S.B. reported to Kansas City police that Stephen Brewer had raped her over a two-year period when she was thirteen and fourteen years old and had taken photographs of her during these incidents. These photographs

included images of S.B. performing oral sex on Brewer and other nude images of her. S.B., then 18 years old, reported that Brewer had recently suggested to her that these pictures still existed, in an effort to keep her from reporting what happened. Officer Damon Hawley informed S.B. about the possibility of getting an ex parte order of protection against Brewer, since S.B. wanted to spend an upcoming holiday at the Brewer residence, where she grew up. Officer Hawley then took S.B. to a shelter. The next day, S.B. returned to the police station and told Officer Hawley that she had obtained an ex parte order.

After S.B.'s initial report, Officer Hawley attempted to obtain a search warrant for the Brewer residence, but he could not get department authorization. He then contacted the FBI to ask whether the FBI could obtain a search warrant. FBI Special Agent Todd Gentry did not think that there was probable cause to justify a search warrant. However, after some discussion, Officer Hawley decided instead to seek Mrs. Brewer's consent to search the residence.

After Officer Hawley learned that S.B. had obtained the ex parte order, he contacted Mrs. Brewer about searching the home. Mrs. Brewer was concerned that their son was with Mr. Brewer and said that she wanted her son back. She told Officer Hawley when Mr. Brewer would likely return, but she did not consent to a search at that time.

Officer Hawley went to the Brewer house with his partner and Special Agent Gentry shortly before Brewer was supposed to arrive, parking their vehicles a few blocks away. Because there were guns in the home, the officers intended to serve the ex parte order on Mr. Brewer while he was still outside. When Brewer returned home, the Brewers' son jumped from the car and ran inside. At that point, Officer Hawley's partner read the ex parte order to Brewer and explained that he needed to leave immediately. Officer Hawley denied Brewer's request to retrieve items from inside the home. After Mr. Brewer left, Mrs. Brewer consented to a search of the residence.

The officers seized various computers and computer media from the home. Three members of the juvenile section of the police department assisted in the search. FBI Special Agent Gentry was also present and answered the officers' computer-related questions. While the search was ongoing, Brewer returned to the residence and parked in the driveway. Officer Hawley again denied Brewer's request to retrieve items from the home and informed him that he needed to leave because of the ex parte order of protection.

Detectives obtained three additional search warrants during the course of their investigation. On January 17, 2006, they successfully applied for warrant to search the computers and media seized during the November 23, 2005 consent search. A forensic analysis of these items, performed several months later, revealed thousands of images of nude and semi-nude children, including pictures of Brewer engaged in sexual acts with S.B. On September 27, 2006, the detectives applied for a warrant to search the Brewer house again for camera equipment and other evidence of child pornography. They seized camera equipment and computer media during the search. On October 5, 2006, the detectives then successfully applied for a warrant to search the additional computer media. This forensic analysis, also performed several months later, revealed additional images of nude children.

A federal grand jury indicted Brewer on four counts of using a minor in sexually explicit conduct for the purpose of producing child pornography, 18 U.S.C. § 2251(a), and three counts of possession of child pornography, 18 U.S.C. § 2252(a)(4). Brewer filed a motion to suppress the evidence from the various searches on numerous grounds. The district court[1] adopted the report and

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

recommendation of the magistrate judge[2] and denied the motion. Brewer then entered a conditional guilty plea to three counts of production of child pornography and one count of possession of child pornography, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Brewer to 600 months' imprisonment.

## II.    DISCUSSION

Brewer appeals the denial of his motion to suppress on four grounds. First, he argues that the November 23 search of his residence was invalid because the officers inappropriately used the ex parte order of protection as a means to keep him from objecting to the search. Second, he argues that the three subsequent search warrant applications contained insufficient information to establish probable cause. Third, Brewer argues that because there was significant involvement of federal officers in the investigation, federal, rather than state, judges were required to issue the search warrants. Finally, he argues that the forensic analyses of the seized computer media violated the Fourth Amendment because they were conducted more than ten days after the January 17 and October 5 warrants authorizing the forensic analyses were issued. In addressing these issues, "we review a district court's findings of fact for clear error and its legal conclusions—including its probable cause determination—de novo." *United States v. El-Alamin*, 574 F.3d 915, 923 (8th Cir. 2009) (internal quotation marks omitted).

### A.    The November 23 consent search

"[A] warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'unreasonable searches and seizures' if the

_____

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

-4-

officers have obtained the consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990). Mr. Brewer does not dispute that Mrs. Brewer gave the officers her consent to search the residence or that she possessed common authority over the areas searched. However, the consent of a single occupant is not always sufficient to permit a search of a residence. "[A] physically present co-occupant's stated refusal to permit entry . . . render[s] the warrantless search unreasonable and invalid as to him." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). In the absence of such a refusal, a third party's consent to search is valid "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." *Id.* at 121.

Brewer argues that the officers' use of the ex parte order reveals an intent to remove him from the scene in order to avoid his possible objection to the search in violation of *Randolph*.[3] As evidence of such an intent, he notes that the officers parked their cars away from his house, served the ex parte order before he could enter the house, delayed asking Mrs. Brewer for consent until after the ex parte order was served, and never advised him of their intent to search the residence.

We agree with the district court's conclusion that the officers did not use the ex parte order to remove Brewer "for the sake of avoiding a possible objection." *See id.* The officers were tasked with serving the valid ex parte order. The officers testified that there was no plan to use the ex parte order in the manner Brewer describes. Rather, two concerns motivated the manner in which they served the order: Mrs. Brewer's concern about the safety of her son and the officers' concerns about the presence of guns in the house. Officer Hawley testified that they parked their cars

---

[3]Brewer testified that he objected to the search of his home after being served with the ex parte order. The officers on the scene, however, testified that Brewer made no such objection. The district court found the officers's testimony more credible, and Brewer does not challenge that finding.

away from the home because they were worried that Mr. Brewer would not return home if he knew the police were there. If that happened, Mrs. Brewer would not have been able to retrieve her son and the officers would not have been able to serve the ex parte order. Officer Hawley also testified that the officers served Mr. Brewer outside the residence to avoid the potential danger that the guns in the house presented. Additionally, Officer Hawley had already asked Mrs. Brewer for consent to search the residence during their earlier conversation. Because she had expressed concern about her son in response, Officer Hawley reasonably declined to inquire again about her consent to search until after her son was returned. Finally, officers have no affirmative duty to advise a potentially objecting defendant of their intent to search. *Randolph*, 547 U.S. at 121 ("[T]he potential objector, nearby but not invited to take part in the threshold colloquy, loses out."). Thus, the district court did not err in concluding that Mr. Brewer was removed pursuant to a valid ex parte order of protection and in furtherance of these concerns, not "for the sake of avoiding a possible objection" to the search, *id.* Therefore, Mrs. Brewer's consent was sufficient to permit the officers to search the home and seize the computer equipment.

## B.   Probable cause in the three search warrant applications

"An affidavit establishes probable cause for a warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir.) (quoting *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006)), *cert. denied*, 554 U.S. ---, 128 S. Ct. 2947 (2008). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'" *United States v. Hansel*, 524 F.3d 841, 845 (8th Cir.) (quoting *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007)), *cert. denied*, 555 U.S. ---, 129 S. Ct. 520 (2008).

Brewer argues that because none of the search warrant applications contained copies or detailed descriptions of any of the images sought or already obtained, the warrants were insufficient to establish probable cause to believe that the images actually met the definition of child pornography. In support of this argument, Brewer relies on cases where defendants challenged whether particular images sought were "obscene" or "lascivious." *See, e.g.*, *United States v. Chrobak*, 289 F.3d 1043 (8th Cir. 2002); *United States v. Syphers*, 426 F.3d 461 (1st Cir. 2005); *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001). In such cases, courts have suggested that additional information might be necessary to allow the issuing judge to make an independent determination that the images, in fact, violated the statute at issue.

In this case, the search warrants were issued under Missouri law, which provides two definitions of child pornography: images where the "production of such visual depiction involves the use of a minor engaging in sexually explicit conduct" and "[a]ny obscene material or performance depicting sexual conduct, sexual contact, or a sexual performance" involving a minor. Mo. Rev. Stat. § 573.010(2). The search warrant applications stated that Brewer photographed S.B. while she performed oral sex on him, which qualifies as "sexually explicit conduct." Thus, the images described in the warrant application met the statute's first definition. As a result, the cases Brewer cites are inapposite; whether the images were also "obscene material" is irrelevant.

Additional information in the warrant applications supported the belief that child pornography would be found. S.B. provided the officers with a detailed description of the other pictures Brewer took while he sexually abused her when she was thirteen or fourteen years old. Allegations of sexual abuse of a minor are part of the totality of circumstances that courts may consider in evaluating whether probable cause existed. *United States v. McCoy*, 483 F.3d 862, 863 (8th Cir. 2007). Moreover, Mrs. Brewer and S.B.'s boyfriend reported that they had seen numerous pictures that they described as "child pornography" on one of the computers. Taken together, the

information included in the warrant applications was sufficient to permit the issuing judge to make an independent determination that probable cause existed to justify the issuance of the search warrants. Therefore the district court did not err in holding that the warrants were properly issued.

### C.    Federal involvement in a state investigation

"A search conducted with significant involvement of federal officers must comply with federal law. Federal agents may not circumvent more restrictive federal requirements by arranging for state officers to search under state law." *United States v. Moore*, 956 F.2d 843, 847 n.3 (8th Cir. 1992) (internal citation omitted). "In determining whether there is significant federal involvement, our cases focus not only on the efforts to obtain a warrant, but also on the execution of the warrant." *United States v. Tavares*, 223 F.3d 911, 915 (8th Cir. 2000). In short, "federal involvement in a state search may serve to render the search subject to federal procedures." *Id.* (quoting *United States v. McCain*, 677 F.2d 657, 662 (8th Cir. 1982)). However, where "the federal involvement in obtaining the warrant and in executing it was at most negligible, state law applies." *United States v. Schroeder*, 129 F.3d 439, 443 (8th Cir. 1997). In this case, Brewer argues that FBI Special Agent Gentry's involvement in the investigation rendered the searches subject to federal, rather than state, law. Thus, he argues, the warrants issued by a Missouri judge were insufficient because under Federal Rule of Criminal Procedure 41, search warrants should have been sought from a federal judge.

The district court did not err in finding that the federal involvement in the investigation was not so significant as to render the investigation federal in nature, and therefore state search warrants were sufficient. Local police officers filed the affidavits and applications for each warrant. Only local officials were present during the second search of the residence. Special Agent Gentry was the only federal officer present during the initial consent search, and he testified that he merely answered

-8-

technical questions about whether particular items constituted computer media. A federal official's limited provision of technical guidance, without more, is insufficient to render the investigation federal in nature.[4] *Schroeder*, 129 F.3d at 443. As a result, we affirm the district court's denial of Brewer's motion to suppress on this ground.

### D.     Timely execution of the forensic analysis search warrants

Under Missouri law, a search warrant "shall expire if it is not executed and the return made within ten days after the date of the making of the application." Mo. Rev. Stat. § 542.276(8). Brewer argues this provision renders void the warrants that authorized the forensic analyses of the seized computer media. However, "evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because *state* law was violated." *United States v. Hornbeck*, 118 F.3d 615, 617 (8th Cir. 1997) (quoting *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994)). Brewer, citing *United States v. Brunette*, 76 F. Supp. 2d 30 (D. Me. 1999), *aff'd*, 256 F.3d 14 (1st Cir. 2001), argues that the forensic analyses of the seized computers violated the Fourth Amendment because the Missouri warrants became void after ten days. Thus, he argues, the forensic analyses were warrantless searches, which are "per se unreasonable under the Fourth Amendment." *See Arizona*

---

[4]On appeal, Brewer asks us to look outside the district court record to note that the forensic lab that conducted the analysis of his computers "is one of a network of laboratories operated by the Federal Bureau of Investigation with the cooperation of local police agencies." As a result, he argues, federal involvement went beyond Special Agent Gentry's presence during the consent search. The Government responds that the actual forensic examiner was a state police officer, and, also using information outside the record, that the forensic lab has mostly non-federal employees. "An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal." *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 559-60 (8th Cir. 2008). Under this rule, we decline to consider evidence concerning the forensic lab.

*v. Gant*, 556 U.S. ---, 129 S. Ct. 1710, 1716 (2009). The Government argues that rather than examining whether the warrants were void under state law, we ought to examine whether they violated the Fourth Amendment because probable cause had dissipated.

We find the First Circuit's approach to this issue in *United States v. Syphers*, 426 F.3d 461, 468-69 (1st Cir. 2005), persuasive. *Syphers* also involved a computer search after the time period that state law permitted for a warrant to be executed, though Syphers argued that this violated Rule 41's ten-day limit on search warrants. The First Circuit held that "[t]he products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if the warrant satisfies constitutional requirements and does not contravene any [Federal Rule of Criminal Procedure]-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Id.* at 468 (quoting *United States v. Mitro*, 880 F.2d 1480, 1485 (1st Cir. 1989)). As previously discussed, the search warrants here were validly issued under Missouri law. In line with the First Circuit's analysis in *Syphers*, we begin our Fourth Amendment analysis with these validly issued warrants, not after applying Section 542.276(8) which Brewer argues would render the warrants void.[5] *See id.* at 468-69 (analyzing the timeliness of a warrant's execution under the Fourth Amendment's "unreasonable delay" standard, rather than the statutory ten-day limit). Therefore, we agree with the Government that because the Fourth Amendment and Rule-embodied policies at issue here are designed "to prevent the execution of a stale warrant," *Syphers*, 426 F.3d at

---

[5]This approach is consistent with that taken in our previous cases. *See Hornbeck*, 118 F.3d at 617 (finding it irrelevant whether a warrant "was void under tribal law due to the failure to timely file the return and provide [the defendant] with an inventory of property seized"); *Bieri*, 21 F.3d at 816 (refusing to "decide whether the warrant violated Missouri law since [the court] conclude[d] the district court did not err in finding the search warrant was constitutionally valid").

469, our analysis of the delay in executing the warrants considers only whether the delay rendered the warrants stale.

A warrant becomes stale if the information supporting the warrant is not "sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993)). "Important factors to consider in determining whether probable cause has dissipated . . . include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997). Brewer does not argue that probable cause to believe that evidence of child pornography would be found on the computers no longer existed at the time they were forensically analyzed. Indeed, applying *Gibson* to the facts of this case makes it clear that the delay had no effect on the probable cause determination. The computer media at issue here were electronically-stored files in the custody of law enforcement. Because of the nature of this evidence, the several months' delay in searching the media did not alter the probable cause analysis. Therefore, since probable cause to believe the media contained child pornography continued to exist at the time the January 17 and October 5 search warrants were executed, the forensic analyses did not violate the Fourth Amendment.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Brewer's motion to suppress.

_____